**IN THE COURT OF APPEALS OF IOWA**

No. 14-1636
Filed August 19, 2015

**EDWARD E. SICKLER,**
    Plaintiff-Appellee,

**vs.**

**AUTO OWNERS INSURANCE COMPANY,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Marion County, Terry R. Rickers, Judge.

An insurance company that provided garage liability coverage to an automotive repair shop appeals summary judgment in favor of a truck driver who incurred damages due to faulty repairs. **REVERSED AND REMANDED.**

Randall C. Stravers of Stravers Law Firm, Oskaloosa, for appellant.

John H. Judisch of Stuyvesant & Benton, Carlisle, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

We are asked in this appeal to consider coverage terms in a garage liability insurance contract. Specifically, Auto Owners Insurance Company is challenging the district court's interpretation of the terms "occurrence" and "physical injury" in its ruling on the parties' cross motions for summary judgment. The district court granted the motion filed by plaintiff Ed Sickler and denied the motion filed by defendant Auto Owners. Because the district court's interpretation of those terms conflicts with precedents from our supreme court, we reverse the summary judgment ruling.

**I.      Background Facts and Proceedings**

An introduction to the parties and timing of events is helpful to understanding the legal issues. On March 21, 2011, Sickler—a self-employed, over-the-road truck driver—took his 2003 Freightliner diesel truck to Toad's Truck & Trailer Repair (Toad's Repair) for an engine overhaul. Toad's Repair completed the overhaul and billed Sickler $13,471.46 for the work. At the time of the work, Toad's Repair had a garage liability coverage policy with Auto Owners. Auto Owners cancelled the policy for non-payment of premium, effective September 2, 2011.

On December 18, 2011, Sickler was driving his truck across the state of Wyoming when the engine broke down. According to a certified diesel mechanic, the engine failure resulted from a loose cam bolt that was not properly torqued at the time of installation or not properly cleaned before installation. In the mechanic's terminology:

[O]nce the cam bolt loosened up, driving on that dowel pin, once that's sheared off, the cam is no longer turning with the rest of the engine, so your valves are not opening and closing in sequence, so you've got values open as your piston is coming up and hitting them . . . [a]nd that's what damages the valves.

In a lawsuit filed by Sickler against Toad's Repair, the district court found the garage mechanic improperly performed the engine overhaul. Sickler proved that as a result of the engine failure, he incurred damages for towing costs, hotel expenses, rental car and fuel, repair costs, and lost trucking revenue. On February 21, 2014, the court entered judgment for Sickler against Toad's Repair for those damages in the amount of $34,256.22.

Because Sickler was unable to enforce his judgment against Toad's Repair, he brought this action against Auto Owners under Iowa Code section 516.1 (2013).[1] In its answer to Sickler's petition, Auto Owners alleged its policy issued to Toad's Repair was "canceled as of the time of any loss of the plaintiff or any claim arising from the loss against the insured or the defendant." Both Auto Owners and Sickler sought summary judgment. Following a hearing, the district court granted Sickler's motion and denied Auto Owners' motion. Auto Owners now appeals.

## II.    Scope of Review

We review for legal error when the question on appeal is how to interpret an insurance policy. *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500–01 (Iowa 2013). Likewise, we review the district court's grant of summary

---

[1] The code section reads in pertinent part, "the judgment creditor shall have a right of action against the insurer to the same extent that such insured could have enforced the insured's claim against such insurer had such insured paid such judgment." Iowa Code § 516.1.

judgment for correction of legal error. Iowa R. App. P. 6.907; *Nationwide Mut. Ins. Co. v. Kelly,* 687 N.W.2d 272, 274 (Iowa 2004). A grant of summary judgment is proper when the moving party shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Boelman*, 826 N.W.2d at 501. When reviewing the grant of summary judgment, we examine the record in the light most favorable to the nonmoving party. *Id.*

### III.    Analysis of Coverage Issue

Before scrutinizing the Auto Owners policy, we review the principles of contract interpretation and construction. Contract interpretation requires us to assign meaning to the words in the policy. *Id.* If the policy does not define the words in question, we assign their ordinary meaning. *Id.* "The plain meaning of the insurance contract generally prevails." *Id.* Contract construction is giving the policy its legal effect. *Id.* In construing a contract, the intent of the parties controls, and "except in cases of ambiguity this is determined by what the policy itself says." *Thomas v. Progressive Cas. Ins. Co.*, 749 N.W.2d 678, 681 (Iowa 2008). Policy language is ambiguous if it is fairly susceptible to more than one reasonable interpretation. *Id.* Our courts avoid "straining the words and phrases of the policy to impose liability that was not intended and was not purchased." *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987).

The question on appeal is whether the garage liability policy purchased by Toad's Repair provided coverage for the damages incurred by Sickler following his engine failure. Sickler argues the property damage occurred on March 21,

2011—the date of the faulty repairs—and therefore, was covered by the insurance policy. Auto Owners contends the property damage did not occur until December 18, 2011—the day Sickler's engine failed—which was outside the policy period.

Several clauses in the insurance policy describing the coverage are at issue, specifically those using the terms "physical injury" and "occurrence." First, the policy stated: "This insurance applies to . . . property damage only if . . . [t]he property damage occurs during the policy period." Second, the policy defined "property damage" as

> 1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> 2. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **occurrence** that caused it.

Third, the policy defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In granting summary judgment to Sickler, the district court concluded: "The physical injury and occurrence—the improper engine overhaul and improper torqueing of the cam bolt—occurred on March 21, 2011; and is therefore covered under the policy." The district court's interpretation of "occurrence" comes under fire from Auto Owners on appeal. Citing *First Newton Nat. Bank v. Gen. Cas. Co.*, 426 N.W.2d 618, 623 (Iowa 1988), the insurer asserts that the time of "occurrence" under the policy is "when the claimant sustains actual damage and not when the act or omission that caused such damage was committed."

Because "occurrence" is defined in the Auto Owners policy, we begin our analysis there. The policy defines occurrence as an accident. The policy does not define accident, but our supreme court has. In *Pursell Const., Inc. v. Hawkeye-Sec. Ins. Co.*, the court explained that in the context of insurance policies, the word accident means

> an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. . . . [G]iving to the word the meaning which a man of average understanding would, we think ["accident"] clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune.

596 N.W.2d 67, 70 (Iowa 1999) (quoting *Central Bearings Co. v. Wolverine Ins. Co.,* 179 N.W.2d 443, 448 (Iowa 1970)).[2] The Eighth Circuit Court of Appeals later discussed the Iowa law distinction between an accident and faulty workmanship:

> Without qualm, the *Pursell* court explained that negligent conduct itself, although it may ultimately result in injury or damage to a victim, does not fall within the ordinary meaning of an accident. (That is not to say that negligence cannot be the cause of an accident.) . . . We therefore hold that defective workmanship, regardless of who is responsible for the defect, cannot be characterized as an accident under Iowa law.

*Norwalk Ready Mixed Concrete, Inc. v. Travelers Ins. Cos.*, 246 F.3d 1132, 1137 (8th Cir. 2001).

We recognize the *Pursell* court found no occurrence, and consequently no coverage, because the only damage alleged from the defective workmanship

---

[2] The *Pursell* definition of accident is consistent with *First Newton Nat. Bank's* description of an occurrence as the event when damages are sustained and not the earlier causal act or omission. *See* 426 N.W.2d at 623.

(failure to construct basement floors at the proper elevation) was to the work product itself. 596 N.W.2d at 71. *Pursell* does not address whether a liability policy provides coverage where faulty workmanship causes property damage to something other than the insured's work product as the result of an unintended and unexpected event. *See Auto-Owners Ins. Co. v. Home Pride Cos., Inc.*, 684 N.W.2d 571, 578 (Neb. 2004) (finding damage to roof structures from faulty installation of shingles was caused by "occurrence" within meaning of commercial liability policy).

In this case, Sickler alleges consequential damages beyond the garage's work product itself. But the problem is the occurrence, or accident, that caused those damages, took place outside the policy period. While the insured, Toad's Repair, negligently overhauled Sickler's truck engine while the Auto Owners policy was in force, Sickler did not incur property damage or loss of use of his property until the engine failure in December 2011, after the policy had expired. Because the Auto Owners policy explicitly required the damages to occur within the policy period, we find no coverage.

Our determination is supported by case law from other jurisdictions. *See, e.g.*, *Samuelson v. Chutich,* 529 P.2d 631, 635 (Colo. 1974) (finding where explosion occurred as result of propane gas escaping from corroded pipes, the "accident" was not a continuing process that began when pipe was improperly installed but occurred at the time of explosion, and thus was not covered by gas company's liability policy, which was in effect at the time of installation but not in

effect at the time of explosion and was limited by its terms to accidents occurring during policy period); *Travelers Ins. Co. v. C. J. Gayfer's & Co., Inc.*, 366 So. 2d 1199, 1202 (Fla. App. 1979) (holding phrase "caused by an occurrence" informs the insured that an identifiable event other than the causative negligence must take place during policy period and term "occurrence" is commonly understood to mean event in which negligence manifests itself in property damage); *Jenoff, Inc. v. New Hampshire Ins. Co.,* 558 N.W.2d 260, 263 (Minn. 1997) (finding no coverage when fire suppression system was negligently installed during policy period but did not result in damage until nearly twenty years later); *Singsaas v. Diederich,* 238 N.W.2d 878, 881–81 (Minn. 1976) (finding no coverage where construction company was insured under occurrence-based policy effective through July 1972 and negligently installed an elevator while policy was in force, but plaintiff was not injured until elevator failed in August 1972); *see also* Allan D. Windt, *Insurance Claims and Disputes* § 11:4 (6th ed. 2013) (explaining that in almost all "occurrence"-type policies the trigger of coverage is defined as the date of the property damage; the date of the wrongdoing or injury-causing event is irrelevant).

With these authorities in mind, when construing the coverage under the Auto Owners policy, we find no ambiguity in the terms "occurrence" or "physical injury." When those terms are considered within the plain meaning of the insurance contract—and in light of our supreme court's holdings in *First Newton* and *Pursell*—we conclude the damages incurred by Sickler are not covered because they occurred outside the policy period. Accordingly, we reverse the

grant of summary judgment in favor of Sickler and remand for the district court to grant summary judgment in favor of Auto Owners.

**REVERSED AND REMANDED.**