**IN THE COURT OF APPEALS OF IOWA**

No. 15-1960
Filed January 11, 2017

**SCHULZ FARM ENTERPRISES, INC.,**
    Appellant,

**vs.**

**IMT INSURANCE,**
    Appellee.

_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Schulz Farm Enterprises, Inc. appeals a grant of summary judgment to IMT Insurance. **AFFIRMED.**

Eldon McAffee and Julie Vyskocil of Brick Gentry, P.C., West Des Moines, for appellant.

Caroline K. Bettis and Scott Wormsley of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Schulz Farm Enterprises, Inc. (Schulz) appeals the district court's grant of summary judgment to IMT Insurance. We hold the district court properly found there were no genuine issues of material fact and IMT was entitled to judgment as a matter of law. We affirm the district court's grant of summary judgment in favor of IMT.

## I. Background Facts and Proceedings

Schulz is a farming operation based in New Hampton, Iowa. Schulz contracted with Clark Swine Technology, Inc. (Clark) to custom feed hogs owned by Schulz at a site owned by Wilson Agriculture. The contract required Clark to take delivery of hogs weighing fifty pounds and raise them until they attained the market weight of approximately 275 pounds. The hogs were owned by Schulz but were under the care and control of Clark.

Clark contacted his independent insurance agent, Melanie Umble, regarding the custom feeding operation. Umble had previously provided Clark with homeowners, renters, health, and life insurance, as well as some farm liability insurance for buildings he owned in other locations. Umble, as an independent agent, does not work for IMT. Clark told Umble he owned neither the hogs nor the building but was responsible for utilities, his own insurance, labor, repairs, feed, and medicine. Based on this information, Umble recommended Clark purchase an IMT Insurance Farmers Personal Liability Coverage policy (Policy). Clark also purchased a Custom Feeding Endorsement

(Endorsement) for an annual premium of $118. The relevant portions of the insurance policy are set forth below:

**Definitions**

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

. . . .

5. "Custom feeding" means the raising or care of "livestock" or "poultry", performed by an "insured" for others for a charge under a written or oral contract or agreement.

. . . .

19. "Property damage" means the physical injury to or destruction of tangible property. "Property damage" does not include the loss of use, unless the property has been physically damaged or destroyed.

. . . .

26. "Your work" means:

a. Work or operations performed by you or on your behalf; or

b. Materials, parts or equipment furnished in connection with such work or operations.

**A. Coverage L- Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

**Exclusions (applying to coverage L and M)**

Coverages L and M do not apply to the following:

20. Custom Feeding

"Bodily injury" or "property damage" arising out of the "insured's" performance of, or failure to perform, "custom feeding" operation. But this exclusion will apply only when your receipts from "custom feeding" operations exceed $2,000 for the 12 months before the beginning of the policy period;

23. Damage to Your Work
"Property damage" to:
a. "Your work", arising out of it or any part of it; or
b. That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.
**Exclusions (applying to coverage L only)**
4. "Property damage" to property rented to, occupied or used by or in the care of an "insured", except for the "property damage" to the "insured locations" that is caused by fire, smoke or explosion.

The Endorsement stated "Coverage L – Liability and Coverage M – Medical Payments to Others is extended to apply to 'custom feeding' operations performed by you. The exclusions under Coverage L and Coverage M pertaining to 'custom feeding' are deleted. All other provisions of the policy apply."

On November 4, 2012, a breaker tripped at the building where 837 hogs were kept, resulting in their deaths. Clark contacted Umble to report the loss and the claim was submitted on February 15, 2013, to IMT. The claim was denied and on April 15, 2014, Clark assigned his claim to Schulz, who proceeded to file suit against IMT in April 2014. The parties filed cross-motions for summary judgment that were heard on August 18, 2015. The district court granted summary judgment to IMT on October 20, 2015. Schulz now appeals.

## II. Standard of Review

We review a district court's grant of summary judgement for correction of errors at law. Iowa R. Civ. P. 6.907. Summary judgment is properly granted when the moving party demonstrates there is no genuine issue of material fact and is entitled to judgment as a matter of law. *W. Bend Mut. Ins. Co. v. Iowa Iron Works, Inc.*, 503 N.W.2d 596, 598 (Iowa 1993). We also review the record in the

light most favorable to the nonmoving party. *Minor v. State*, 819 N.W.2d 383, 393 (Iowa 2012).

### III. Extent of Coverage

Schulz claims that under the language of the policy and endorsement, the loss of the hogs in Clark's care is covered by IMT. Schulz relies on the language of the endorsement stating "[t]he exclusions under Coverage L and Coverage M pertaining to 'custom feeding' are deleted" focusing especially on the words "exclusions" and "pertaining to." Schulz claims this language removes not only exclusion twenty, entitled custom feeding, but also the sections excluding coverage of property "in the care of" the insured, as well as property damage for property damage arising out of Clark's work.

Our supreme court has held a similar policy and endorsement did not function to cover the death of the hogs because the endorsement only removed the language in explicitly referencing the custom feeding. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 505 (Iowa 2013). Schulz claims the policy and exemption in *Boelman* are significantly different, and that *Boelman* should not apply here. In *Boelman*, the custom feeding endorsement states, "The endorsement operates to modify the general exclusion under section 6(a) regarding custom farming." *Id.* at 499 (emphasis omitted). The endorsement in the policy at issue states, "The exclusio*s* under Coverage L and Coverage M *pertaining to* 'custom feeding' are deleted." (Emphasis added.)

We are unconvinced by Schulz's argument and find *Boelman* does control the disposition of this case. The plural form, exclusions, is used because the

exclusion for custom farming is removed under both L and M, not because there is more than one exclusion which is deleted. Additionally, construing "pertaining to" so far as to remove all exclusions touching the custom feeding operation would force us to "[engage] in a strained analysis and would be stretching the endorsement's terms beyond the bounds of reasonability." *See id.* at 504.

Applying the *Boelman* analysis, we find the endorsement functions only to remove the discrete custom feeding exclusion found in exclusion twenty. Removing this exclusion insures Clark against damages caused by the hogs, but not damage done to the hogs. All other exclusions still apply and those exclusions eliminate coverage here, as the loss arose out of Clark's work to property in his care or control, both of which are not covered under the language of the policy.

Additionally, the court in *Boelman* noted, "The fact Grinnell Mutual only charged $27 in annual premiums for the added protection under the endorsement does not correlate with the substantially elevated risk they would have assumed if they had removed all exclusions touching upon the Boelmans' custom farming operation." *Id.* at 505. In the present case, Clark was charged an additional $118 in premiums for the endorsement. While somewhat more expensive than the policy in *Boelman*, we find this additional premium does not correspond with the additional risk of insuring the health of the hogs, but does correspond with the additional risk of damage caused by the hogs.

**IV. Doctrine of Reasonable Expectations**

Schulz also argues the doctrine of the insured's reasonable expectations should be invoked in this case. "The reasonable expectations doctrine is a recognition that insurance policies are sold on the basis of the coverage they promise. When later exclusions work to eat up all, or even substantially all, of a vital coverage, they cannot rest on technical wording, obscure to the average insurance purchaser." *Clark-Peterson Co. v. Indep. Ins. Assoc., Ltd.*, 492 N.W.2d 675, 679 (Iowa 1992). "The doctrine is carefully circumscribed; it can only be invoked where an exclusion '(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.'" *Id.* at 677. In order to trigger application of the doctrine of reasonable expectations, the insured must prove "circumstances attributable to the insurer that fostered coverage expectations, or the policy is such that an ordinary layperson would misunderstand its coverage." *Benavides v. J.C. Penney Life Ins. Co.*, 539 N.W.2d 352, 357 (Iowa 1995).

Schulz claims an ordinary person in Clark's situation would have expected coverage for the hogs based on the wording of the endorsement. However, Schulz did not provide evidence that Clark understood the policy's dominate purpose to be for insuring the hogs as property. Instead the evidence presented showed all parties understood the limitations of the policy. At her deposition, Clark's insurance agent, Umble, stated she discussed the policy and its purpose with Clark before he purchased it, and Clark understood and agreed the policy would only cover claims from the custom feeding operation, such as the hogs

causing property damage or biting a visitor to the operation. Umble also stated Clark understood there was no coverage at the time of loss. Clark owns other properties on which he operates similar custom feeding operations and has purchased insurance. We agree with the district court that "given Clark's experience in custom feeding operations and previous relationships with insurance companies . . . it [is] unlikely that Clark reasonably believed the hogs were covered." Therefore, we hold the doctrine of reasonable expectations is not applicable here.

**AFFIRMED.**