# IN THE COURT OF APPEALS OF IOWA

No. 17-0040
Filed December 6, 2017


**JOANN STRUEBING, J & E ENTERPRISES, and
EL-WAYNE, INC.,**
        Plaintiffs-Appellants,

**vs.**

**ADDISON INSURANCE COMPANY,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Marshall County, John J. Haney,

Judge.


        Joann Struebing, J & E Enterprises, and El-Wayne, Inc. appeal a district

court declaratory ruling.  **AFFIRMED.**


        James C. Larew of Larew Law Office, Iowa City, for appellant.

        Stephen E. Doohen of Whitfield & Eddy, P.L.C., Des Moines, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Joann Struebing, J & E Enterprises, and El-Wayne, Inc. (collectively referred to as Struebing) sued Addison Insurance Company claiming property damage by fire and subsequent property damage by rain constituted two separate losses under an insurance policy and arguing Addison wrongly applied the policy term "Actual Cash Value" (ACV) when it paid for the loss. Struebing appeals contending the district court erred in (1) concluding the two purportedly separate casualty losses constituted only one covered cause of loss under her insurance policy and therefore denying her breach-of-contract claim and (2) defining ACV to mean market value.

Struebing was the owner of a multi-unit apartment complex. Addison issued a policy insuring the property against casualty loss; the policy limit on the structure itself was just over $320,000, and the term of the relevant policy ran from June 1, 2012, through June 1, 2013. On April 7, 2013, a fire occurred in the upper level of the building. In order to extinguish the fire, firefighters were required to cut a hole in the roof. Eight of the apartment units in the complex, all on the upper floor, and some of the common areas were damaged by the fire.

Struebing filed a claim with Addison. Temporary repairs were made to the roof, and a contractor recommended replacement of the entire roof. In late April, Struebing contracted with a roofing company to have the roof replaced. Addison's adjuster directed Struebing to hold off on replacing the roof pending its full assessment of the damage.

On May 25 and 26, the geographic area where the property was located experienced "torrential rains." The temporarily-repaired roof succumbed to the rainfall and the entire building suffered water damage.

Addison subsequently assessed the damage resulting from the April 7 fire as a total loss. Addison had the property appraised, and an appraiser concluded the property's value just before the fire to be $254,000.00. On June 4, Addison paid Struebing the entire appraisal amount. Addison denied Struebing's subsequent attempts to receive a separate payout for damage caused by the rainstorm, maintaining both occurrences amounted to a single covered cause of loss under the insurance policy.

On April 7, 2014, Struebing filed suit, alleging breach of contract and bad faith on the part of Addison. Struebing filed an amended petition in November 2015 additionally seeking a declaratory judgment that the fire and rain damage amounted to two separate covered causes of loss, thus entitling her to a second payout under the policy. In its answer to the amended petition, Addison counter-claimed for a declaratory judgment that only one covered loss existed and the property's market value should be used to value the loss.

In March 2016, Struebing moved for partial summary judgment on the issue of number of covered causes of loss. Shortly thereafter, Addison also moved for partial summary judgment on the issues of valuation and number of covered causes of loss. In April, Struebing moved for the appointment of an appraisal umpire to serve on an appraisal panel for the purpose of valuation of the loss or losses. *See* Iowa Code § 515.109(6)(a) (2014) (requiring fire-insurance contracts to contain a provision regarding appointment of appraisal

panel and umpire). In June, the district court entered a declaratory ruling and concluded, (1) based on "the policy language and applicable law, the rain damage must be considered as part of the original fire occurrence" and (2) the property's market value should be used for purposes of valuation. The court also appointed an appraisal umpire and granted Addison summary judgment on Struebing's bad-faith claim. Struebing applied for an interlocutory appeal of this ruling, but the supreme court denied her application.

In November, the appraisal panel, which consisted of the umpire and two appraisers, submitted its appraisal to the court. The panel concluded, "The fair market value of the premises which is the subject of this litigation immediately prior to the fire occurring on April 7, 2013 is $302,616." The parties subsequently stipulated that Addison tendered the difference between the amount previously paid for damage to the structure and the amount of the appraisal award. In December, based on this course of events, the district court issued a final order dismissing Struebing's breach-of-contract claim. As noted, Struebing appeals.

Because Struebing challenges rulings made by way of a declaratory judgment in an action at law, our review is for legal error. *Van Sloun v. Agan Bros., Inc.*, 778 N.W.2d 174, 178–79 (Iowa 2010). We also review the district court's interpretation of an insurance policy for legal error. *Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 731 (Iowa 2016). Determination of Struebing's argument on appeal turns on the language contained in the insurance policy. *See Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 501–02 (Iowa 2013).

First, Struebing argues she should receive payment for two separate causes of loss—one for the damage caused by fire and another for damage caused by rain—and the district court erred in concluding the two separate occurrences constituted only one covered cause of loss under her policy. The policy documents expressly provide Addison "will not pay for loss of or damage to . . . [t]he interior of any building or structure . . . caused by or resulting from rain . . . unless . . . [t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." It is undisputed that the April 7, 2013 fire was a covered cause of loss. The district court concluded the policy

> provides that rain damage is only covered if the building or structure first sustains damage by a covered cause of loss. In this instance, the fire was a covered cause of loss and the subsequent rain damage would therefore be considered part of the first occurrence for purposes of coverage under the policy. The policy groups these together as one covered occurrence and allows the water damage from the rain to be included when calculating the amount of loss the insurance company should cover. . . . Based upon the facts presented, the policy language and applicable law, the rain damage must be considered as part of the original fire occurrence.

Based upon our review of the plain and unambiguous language of the policy, we agree with the district court that the successive fire and rain damage amounted to component parts of one covered cause of loss and affirm on this issue without further opinion pursuant to Iowa Court Rule 21.26(d).

Next, Struebing contends the district court erred in defining ACV to mean market value. This argument, however, is based on Struebing's premature assumption that this court would rule in her favor on her first argument. She generally concedes that defining ACV to mean market value under the policy is

appropriate in "total loss" situations but argues the fire only amounted to a partial loss and the subsequent rain damage is what made it a total loss. Due to our conclusion that the fire and rain occurrences amount to a single covered cause of loss under the policy, together with the fact that they amounted to a total loss, we affirm the district court's definition of the term ACV.[1] Furthermore, Struebing does not argue that there is no regular market for the property or that it is impossible to determine its market value. The plain and unambiguous language of the policy documents indicates, under such circumstances, the use of market value is required.[2]

Finding no legal error, we affirm the district court's declaratory ruling in its entirety.

**AFFIRMED.**

---

[1] Struebing concedes that a market value definition makes sense if a property suffers a total loss.

[2] The policy documents define ACV as follows:

1.    In the event that there is a regular market for the property where the property can be bought and sold in the ordinary course of dealing, and it is possible to determine the property's market value, then the market value of the property is its [ACV].

2.    In the event that there is no regular market for the property where the property can be bought and sold in the ordinary course of dealing, or it is not possible to determine the property's market value, then:
[ACV] means the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.