**GREENBRIAR GROUP, L.L.C., Plaintiff–Appellant,**

v.

**Timothy HAINES, Defendant–Appellee,**

**and**

**Elkco Properties, Inc., and Indian Harbor Insurance Company as subrogee of Elkco Properties, Inc., Third–Party Defendants–Appellants.**

No. 13–0569.

Court of Appeals of Iowa.

Jan. 9, 2014.

As Amended Aug. 1, 2014.

Brian D. Nolan and Kathryn L. Hartnett of Nolan, Olson, & Stryker, P.C., L.L.O., Omaha, Nebraska, and Stanley W. Kallmann and Mark L. Antin of Gennet, Kallmann, Antin & Robinson, P.C., Parsippany, New Jersey, for appellants.

Jeffrey L. Goodman and Marcy A. O'Brien, West Des Moines, for appellee.

Heard by VOGEL, P.J., and POTTERFIELD and McDONALD, JJ.

McDONALD, J.

Indian Harbor Insurance Company ("Indian Harbor"), as subrogee of Elkco Properties, Inc., ("Elkco") and Greenbriar Group, L.L.C. ("Greenbriar") (collectively, hereinafter "Greenbriar parties") appeal the district court's order granting summary judgment in favor of Timothy Haines and the district court's order granting Haines' subsequent motion to dismiss. We affirm the judgment of the district court.

## I.

This case arises out of a fire occurring at an apartment complex owned by Greenbriar. The property was managed by Elkco, which is also a majority owner of Greenbriar. The property was insured by Indian Harbor. The Greenbriar parties allege that the fire started when Haines, a maintenance worker leased from Oasis Outsourcing, Inc. ("Oasis"), negligently soldered a water valve located in the shower of an apartment at the complex. The fire damage was fairly extensive, and Indian Harbor paid $1,163,434.66 on Greenbriar and Elkco's claim.

The Greenbriar parties initiated this suit in November 2010, asserting a single claim of negligence against Haines and Oasis. On February 14, 2011, Haines filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code, thereby staying this action. The Greenbriar parties sought relief in the bankruptcy court. They filed a motion to lift stay and for leave to proceed "to prosecute a property damage claim against the debtor, Timothy J. Haines, and to proceed solely to the extent of any applicable insurance." The Greenbriar parties believed that Haines, as a leased employee of Oasis, might be covered under Oasis's commercial general liability policy issued by Lexington Insurance Company ("Lexington"). The bankruptcy court granted the Greenbriar parties' request for relief "to the extent requested in the motion." Subject to the order allowing the Greenbriar parties to proceed to the extent of any applicable insurance, Haines received a discharge order in the bankruptcy proceeding.

Having obtained relief from the bankruptcy court to prosecute their claim against Haines, the Greenbriar parties reengaged in this proceeding. After a flurry of procedural feints, thrusts, and parries, the parties realigned themselves and ended up with claims, counterclaims, and third-party claims against each other. As relevant here, in its second amended

petition, Greenbriar asserted claims against Haines for negligence and res ipsa loquitur. Haines asserted a declaratory judgment counterclaim against Greenbriar and third-party claim against Indian Harbor, as subrogee of Elkco. In his declaratory judgment counterclaim and third-party claim, Haines sought a determination on the issue of whether he was an employee of Greenbriar or Oasis and a determination of whether he was a covered insured within the meaning of Oasis's insurance policy issued by Lexington. Because the Lexington policy was at issue, Lexington attempted to intervene in the action, but the Greenbriar parties successfully resisted Lexington's motion to intervene on the grounds that Lexington did not meet the substantive requirements for intervention as a matter of right or permissive intervention under Iowa Rule of Civil Procedure 1.407.

Haines and the Greenbriar parties filed motions for summary judgment. The district court initially denied both motions. With respect to the Greenbriar parties' motion, the district court found that there were disputed issues of material fact regarding both Haines' negligence and a potential intervening cause giving rise to a defense. With respect to Haines' motion, the district court found that it was not ripe for adjudication because Haines' liability for the fire had not been established. The district court held that only after liability had been established would the issue of whether an insurer must indemnify its insured arise. Despite this ruling, the district court noted that when the issue was properly before it, it would find that Haines was not an employee of Oasis, and, therefore, Haines would not be an insured within the meaning of the Lexington policy.

Haines filed a motion to reconsider and/or enlarge findings. In ruling on this motion, the district court, relying on new authority, held that Haines' declaratory judgment action was ripe for resolution prior to any liability determination being made. The court then reached the substance of Haines' declaratory judgment action and held that Haines was not an employee of Oasis and, therefore, was not an insured within the meaning of the Lexington policy. Because the bankruptcy court order allowed the Greenbriar parties to proceed only to the extent of any applicable insurance, and because the district court determined that Haines was not covered by the Lexington policy or any other insurance policy, the district court then dismissed the Greenbriar parties' claims against Haines.

II.

■ The court first turns its attention to the district court order granting Haines' motion for summary judgment. We review the district court's grant of summary judgment for corrections of errors at law. *See Boelman v. Grinnell Mut. Reins. Co.,* 826 N.W.2d 494, 500 (Iowa 2013). "The district court properly grants summary judgment when the moving party demonstrates there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law." *Id.* at 501. "[W]e examine the record in the light most favorable to the nonmoving party.... [and] [w]e afford the nonmoving party every legitimate inference that can be reasonably deduced from the evidence...." *Id.* (citations and internal quotation marks omitted). "[I]f reasonable minds can differ on how the issue should be resolved, a fact question is generated, and the district court should deny summary judgment." *Id.* (citations and internal quotation marks omitted).

A.

■ The Greenbriar parties first contend that the district court erred in

holding that Haines' claim was ripe for adjudication. "If a claim is not ripe for adjudication, a court is without jurisdiction to hear the claim and must dismiss it." *Iowa Coal Mining Co., Inc. v. Monroe Cnty.*, 555 N.W.2d 418, 432 (Iowa 1996). "A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *State v. Wade*, 757 N.W.2d 618, 627 (Iowa 2008). The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (*abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)).

Haines filed his counterclaim and third-party claim for declaratory relief pursuant to Iowa Rule of Civil Procedure 1.1102. As relevant here, Rule 1.1102 provides that "[a]ny person interested in an oral or written contract, ... or whose rights, status or other legal relations are affected by any ... contract ... may have any question of the construction or validity thereof or arising thereunder determined, and obtain a declaration of rights, status or legal relations thereunder." Here, Haines sought a declaration of his rights, status, and legal relationships in two respects. First, he sought a declaration of whether he was an employee of Greenbriar or Oasis under the service agreements between Greenbriar and Oasis. Second, Haines sought a determination of whether he was an "insured" within the meaning of the Lexington policy, which turned on his employment status. The relevant language of the Lexington policy provides as follows:

Each of the following is also an insured:

Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" ... but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

. . . .

"Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary, or other compensation by you or anyone else for their work performed for you.

"Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

"Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short term workload conditions.

Although not dispositive of the issue before us, it should be noted that at no point did the Greenbriar parties seek to dismiss, stay, or sever Haines' claim for declaratory relief on the grounds that the claims were not ripe. The ripeness issue was raised only in the Greenbriar parties' resistance to Haines' motion for summary judgment.

 The mere filing of a declaratory judgment action does not, in and of itself, create a justiciable controversy. This is because the declaratory judgment rules do not create substantive rights; instead, they merely provide a mechanism to secure judicial relief in an expeditious man-

ner. Thus, even in a declaratory judgment action there still must exist a justiciable controversy between the parties. Determining whether a claim presents a justiciable controversy ripe for review is particularly difficult in the declaratory judgment context. Indeed, our supreme court has recognized that " '[o]ne of the most troublesome questions in this field of law is, when does a justiciable controversy arise, as distinguished from a mere abstract question?' " *Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 474 (Iowa 2004) (quoting *Wesselink v. State Dep't of Health*, 248 Iowa 639, 80 N.W.2d 484, 486 (Iowa 1957)). The supreme court has articulated the answer to this question in different ways. For example: " 'The basic question is said to be whether the facts alleged show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.' " *Id.* at 474 (quoting *Katz Inv. Co. v. Lynch*, 242 Iowa 640, 47 N.W.2d 800, 805 (Iowa 1951)). Somewhat differently: "We search, then, for an 'antagonistic assertion and denial of right' and, if found and other proper allegations appear, the court may then entertain the question of whether the plaintiffs' claim is proper and justified." *Id.* at 474 (quoting *Wesselink*, 80 N.W.2d at 487). The upshot: the court must make a practical, common sense determination as to whether judicial action is proper. In making this determination, the court must consider the declaratory judgment plaintiff's interest in expeditious resolution of the claim, whether future factual development might affect the resolution of the claim, the need to conserve judicial resources and avoid rendering advisory opinions, and whether declaratory relief will bring finality to the controversy between the parties. Taking all of these factors into consider-

ation, we conclude that Haines' claim was ripe for review.

■ Haines' claim for declaratory relief under the facts and circumstances of this case is an "antagonistic assertion" of his right to relief under the Bankruptcy Code and a denial of the Greenbriar parties' right to proceed in derogation of that right. Haines availed himself of the protections afforded by the Bankruptcy Code and obtained a discharge order. Generally, a discharge order serves "as an injunction against the commencement or continuation of an action" against the debtor for prepetition liabilities. 11 U.S.C. § 524(a)(2). A discharge order advances one of the primary purposes of the Bankruptcy Code: to permit the debtor "to start afresh" with "a new opportunity in life and a clear field for future effort, unhampered" by the obligations of preexisting liabilities. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The Greenbriar parties obtained relief to proceed against Haines despite the mandatory stay and subsequent discharge order, but "solely to the extent of any applicable insurance." The Greenbriar parties' continued litigation of this claim to the extent of any applicable insurance, while certainly permissible, infringes on Haines' opportunity to start afresh unhampered by his past. Haines thus has a sufficient, real, and immediate interest in ending the litigation between himself and the Greenbriar parties. Haines' request for a determination that he is not an employee of Oasis and that he is not a covered insured under the Lexington policy thus raises real, substantial, and contested issues among the parties: do the Greenbriar parties have the authority to proceed against Haines, and does the district court have the authority to proceed. The resolution of these issues in Haines' favor "terminate[d] the uncertainty or con-

troversy giving rise to the proceeding," Iowa R. Civ. P. 1.1105, thereby demonstrating that there was, in fact, a real controversy between the parties. Although Haines' antagonistic assertion of his rights under the Bankruptcy Code is sufficient to create a justiciable controversy, we will also address the Greenbriar parties' other arguments.

The Greenbriar parties argue that an action to determine coverage under an indemnity policy cannot be ripe until such time as liability of the insured is established and the duty to indemnify arises. The Greenbriar parties rely on *Travelers Insurance Cos. v. Penda Corp.,* 974 F.2d 823 (7th Cir.1992). In that case, the court, interpreting Illinois law, stated "that the determination of whether [the insurer] has a duty to indemnify is not ripe until the underlying litigation is terminated." *Travelers Ins.,* 974 F.2d at 833. That case is not controlling here. Further, and more important, *Travelers'* statement regarding Illinois law is incomplete. While it is generally true under Illinois law that the duty to indemnify does not arise until the liability of the insured has been established, Illinois law also provides that a declaratory judgment action to determine coverage under an indemnification policy is proper so long as the factual issue or issues in the coverage proceeding are separable from those at issue in the liability proceeding. *See Home Ins. Co. of Illinois v. Hooper,* 294 Ill.App.3d 626, 229 Ill.Dec. 129, 691 N.E.2d 65, 69 (Ill.App.Ct.1998) (stating that "a duty to indemnify issue may not be premature even before liability is incurred in the underlying claim" and that "[t]he question of coverage can appropriately be decided in a declaratory judgment action where the issues in the underlying suit are separable from those in the collateral proceeding").

The rule allowing a coverage action to proceed prior to the resolution of the related liability action where the issues in each case are separable is well accepted. *See Kelly v. Iowa Mut. Ins. Co.,* 620 N.W.2d 637, 643 (Iowa 2000) (noting a majority of courts have adopted the rule); *see also Scottsdale Ins. Co. v. Universal Crop Prot. Alliance, L.L.C.,* 620 F.3d 926, 934 (8th Cir.2010) (holding that under Minnesota law "[i]n the insurance policy coverage context, a declaratory judgment action is ripe irrespective of whether the underlying litigation is ongoing or resolved"); *Clarendon Nat'l Ins. Co. v. United Fire & Cas. Co.,* 571 F.3d 749, 752 (8th Cir.2009) (finding coverage dispute to be ripe in a case involving Arkansas law even though no liability suit had been filed); *Am. States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998) (finding an actual controversy existed in a case involving Texas law "despite the fact that the underlying state court suit had not reached final judgment"); *Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp.,* 968 F.2d 707, 711 (8th Cir.1992) (finding a dispute to be ripe in a case involving Missouri law even though no suit had been filed).

Although the rule has not been explicitly adopted in Iowa, it is consistent with Iowa law. For example, in *Iowa Mutual Insurance Co. v. McCarthy,* 572 N.W.2d 537 (Iowa 1997), the insurer commenced a declaratory judgment action against its insured and the injured party seeking a ruling that an employee exclusion provision in the policy precluded coverage for the claims. *See McCarthy,* 572 N.W.2d at 538. At the same time, the injured party filed a liability claim against the insured. *See id.* at 538–39. As in this case, the coverage determination was dependent on the determination of the insured's employment status—an issue separate and distinct from the liability determination. The district court stayed the liability action and

tried the coverage action first. The supreme court held that the injured party's interest in the liability insurance policy was sufficient to create a justiciable controversy between the injured party and the insurer. *See id.* at 541. Although Lexington is not a party to this proceeding, the district court found—at the Greenbriar parties' urging—that Haines was a proxy for Lexington because he adequately represented Lexington's interest in this litigation.

The rationale underlying the majority rule is that the coverage action should be allowed to proceed in the interest of judicial economy unless the facts developed in the coverage action could prejudice the insured in the liability action. *See, e.g., Wells Dairy, Inc. v. Travelers Indem. Co. of Illinois,* 241 F.Supp.2d 945, 976 (N.D.Iowa 2003) (discussing rationale). This typically occurs when the insurer and the insured have conflicting interests. When the material facts in each case are wholly separable, however, the insured is not at risk of being disadvantaged in the liability proceeding by the conduct of the insurer in the coverage proceeding. In this case, Haines and Lexington have no conflict of interest. Their interests are aligned. In this case, the factual issues on the liability claims and the claims for declaratory relief are wholly separable. As the Greenbriar parties note, the only issues to be litigated in the liability proceeding are the facts and circumstances surrounding the fire. Haines employment status is not at all relevant to those factual issues. Whether Haines is an insured under the Lexington policy turns only on his employment status. The facts and circumstances surrounding the fire are not material to the coverage question. There is no reason that the coverage determination cannot or should not proceed.

The Greenbriar parties also argue that Haines' claim was not ripe because Lexington was not a party to this proceeding. The Greenbriar parties argue they were and are prejudiced by not having the opportunity to conduct discovery related to Lexington. We conclude that Lexington's presence as a party in this proceeding was unnecessary for the district court to determine whether Haines was an insured within the meaning of the policy. The policy was in the summary judgment record before the court. The service agreements governing the relationship between Haines, Greenbriar, and Oasis were before the court. The Greenbriar parties and Haines had adverse interests in the determination of the issues presented, and they had incentive to, and did in fact, fully litigate the same. There was and is no further factual development regarding Lexington necessary to resolve Haines' declaratory judgment action. To the extent that any additional discovery was necessary, the Greenbriar parties failed to request additional time to conduct such discovery. *See* Iowa R. Civ. P. 1.981(6) (setting forth procedure to conduct additional discovery related to adjudication of summary judgment motion); *Bitner v. Ottumwa Sch. Dist.,* 549 N.W.2d 295, 302 (Iowa 1996) (holding that party waived right to conduct additional discovery in support of resistance to motion for summary judgment where party failed to file a properly supported affidavit requesting such relief).

Additionally, the Greenbriar parties cannot now complain that Lexington is not at the table when they are the ones who pulled away the chair. Lexington sought to intervene in this proceeding, but the Greenbriar parties successfully resisted the motion, arguing that Lexington did not meet the requirements for intervention as a matter of right or permissive intervention under Rule 1.407. The district

court—at Greenbriar's urging—found and concluded that Lexington's interest was adequately represented by Haines because "the jurisdiction question is one that will be answered in Haines' declaratory judgment action requesting that the court determine whether or not he was an employee of Oasis." The Greenbriar parties' stance in the district court is thus contrary to its current position, and they are precluded from now reversing course. *See State v. Duncan,* 710 N.W.2d 34, 43 (Iowa 2006) (stating that "preclusion of inconsistent positions" prevents "[a] party who has ... assumed a particular position in judicial proceedings" from assuming "a position inconsistent therewith to the prejudice of the adverse party"); *id.* at 43–44 (stating that preclusion of inconsistent positions is a "common sense rule, designed to protect the integrity of the judicial process" that can be raised by the court on its own motion).

### B.

We next address whether the district court erred in declaring that Haines was an employee of Greenbriar and Elkco. When the question concerning the nature of the employment relationship concerns co-employment, leased servants, or borrowed servants, "the primary focus is on the intent of the parties." *McCarthy,* 572 N.W.2d at 542. The intent of the parties can be determined by the nature of the relationship between the parties as expressed in the agreement or agreements between each other, if any, and by the nature of the employment relationship created with the employee at issue. The nature of the employment relationship is "not determined by one particular fact or circumstance." *Heinz v. Heinz,* 653 N.W.2d 334, 343 (Iowa 2002). "Rather, we look to all the circumstances of a case to decide the nature of the relationship." *Id.* Relevant factors include:

(1) the right of selection, or to employ at will;

(2) responsibility for the payment of wages by the employer;

(3) the right to discharge or terminate the relationship;

(4) the right to control the work; and

(5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed.

*Gabrielson v. State,* 342 N.W.2d 867, 870 (Iowa 1984). After careful review of the summary judgment record, we conclude that the district court did not err in concluding that there was no genuine issue of material fact regarding Haines' employment status.

Oasis is a professional employer organization that provides administrative support related to payroll, taxes, insurance, and benefits. Pursuant to the service agreements entered into between Oasis and Greenbriar/Elkco, Oasis provided payroll and benefits management services that included the management of payroll, workers' compensation, and health insurance. When Oasis provides services for a company, all employees of that company are reassigned to Oasis from an administrative standpoint. This allows Oasis to manage the employees on an administrative level. Oasis then "leases" the employees back to their original companies for work purposes. Oasis refers to employees that they manage on behalf of another company as "leased employees" of Oasis. While Haines was administratively reassigned from Greenbriar to Oasis and nominally may have had an employment relationship with Oasis, it is clear that the parties' intent was for Haines to remain an employee of Greenbriar and to outsource all of the administrative human resource functions related to his employment from

Greenbriar to Oasis. An analysis of the traditional indicia of an employment relationship confirms that conclusion.

▆▆ Generally, the right of control is the principal test for determining whether an employee-employer relationship exists. *Wolf v. DaCom, Inc.,* 499 N.W.2d 728, 731 (Iowa Ct.App.1993). Pursuant to the service agreements, Oasis provided payroll and benefits management services to Greenbriar and Elkco that included the management of payroll, workers' compensation, and health insurance. There is nothing in the record to suggest that Oasis had any further involvement with the individuals who worked at Greenbriar or Elkco. Oasis had never selected individuals to work at the apartment complex; rather, Greenbriar and Elkco had the right of selection. Likewise, Oasis did not have authority to terminate individuals that worked for Greenbriar or Elkco. If Greenbriar or Elkco terminated their service agreements with Oasis, all individuals working for Greenbriar or Elkco would continue to be employed with Greenbriar or Elkco.

Furthermore, Oasis did not pay the wages of any individual who worked for Greenbriar or Elkco; rather, Greenbriar or Elkco provided the funds to Oasis, who then prepared the payroll checks from those funds. While the service agreements contain some language regarding Oasis's requirement to pay workers minimum wage, the agreements also clearly state that the primary responsibility to pay workers remained with Greenbriar and Elkco. In addition, there is no evidence that Oasis had ever paid Haines or other employees at the apartment complex from funds not provided by Greenbriar or Elkco

There is also no evidence that Oasis ever exercised control over any individual who worked at Greenbriar or Elkco, including Haines, and there is no evidence that any-one from Oasis ever visited the site of the apartment complex. There is nothing in the record to suggest that Oasis benefitted from the work performed by Haines—when Haines was performing maintenance work, it was for the benefit of Greenbriar or Elkco. Additionally, Haines stated in his deposition that he believed he was an employee of Greenbriar, not Oasis. Greenbriar and Elkco have offered no evidence that the parties intended for Haines to be considered an employee of Oasis.

Because the district court correctly found that Haines was not an employee of Oasis, Haines would not be covered under Oasis's insurance policy.

· C.

The Greenbriar parties contend that even if Haines is not a covered insured within the meaning of the policy, Lexington is estopped from denying coverage due to their involvement in the litigation as attorneys for Haines. "Justifiable reliance and prejudice must be shown to estop an insurer from denying coverage." *Westfield Ins. Cos. v. Economy Fire & Cas. Co.,* 623 N.W.2d 871, 880 (Iowa 2001). Upon our careful review of the summary judgment record, we conclude that the district court did not err in concluding that the Greenbriar parties failed to generate a disputed issue of material fact on this issue.

III.

The standard for reviewing motions to dismiss is for corrections of errors at law. *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.,* 832 N.W.2d 636, 640 (Iowa 2013). "Dismissal of the petition is only appropriate if, when viewing the petition in the light most favorable to the plaintiff, the plaintiff's claim could not be sustained under any state of facts provable under the petition." *Id.* (citations and internal quo-

tation marks omitted). The relief afforded the Greenbriar parties by the bankruptcy court was the permission to proceed against Haines but only to the extent of any applicable insurance. The authority to proceed pursuant to the bankruptcy court's order is a threshold issue; in the absence of any applicable insurance, neither the Greenbriar parties nor the district court had the authority to proceed against Haines. *See Ass'n of St. Croix Condo. Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir.1982). Because the district court did not err in finding Haines' employment and insurance status were ripe for adjudication, and because the court properly determined that Haines was an employee of Greenbriar, and thus not covered under Oasis's insurance policy, the district court did not err in granting Haines' motion to dismiss.

## IV.

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Haines and adverse to the Greenbriar parties. We also affirm the order and judgment of the district court dismissing the Greenbriar parties' claims with prejudice.

**AFFIRMED.**