**IN THE COURT OF APPEALS OF IOWA**

No. 21-0918
Filed July 20, 2022

**NORTH STAR MUTUAL INSURANCE COMPANY,**
Plaintiff-Appellee,

**vs.**

**GARY SCHLEY,**
Defendant,

**JULIE HANSEN SCHLEY**,
Intervenor-Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Duane E. Hoffmeyer, Judge.

Intervenor appeals the grant of summary judgment for an insurance company on its declaratory judgment actions. **AFFIRMED.**

Michael J. Jacobsma of Jacobsma Law Firm, P.C., Orange City, for appellant.

Jonathan M. Brown and Brad Entwistle of Walentine O'Toole, L.L.P., Omaha, Nebraska, for appellee.

Heard by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

North Star Mutual Insurance Company filed this declaratory judgment action to determine its obligation to defend or indemnify Gary Schley against claims raised in a separate lawsuit filed by his ex-wife, Julie Schley. After granting Julie's motion to intervene, the district court decided Gary was not covered by the insurance policy issued to Gary's parents, Donald and Margery Schley. Finding no error in the court's interpretation of the policy, we affirm.

## I. Facts and Prior Proceedings

In January 2018, Julie Schley was caring for her show horses at the Sioux County farm owned by her former in-laws, Donald and Margery. Although she had a lease with them to board her horses there, the farm was mainly devoted to raising hogs. Julie's ex-husband, Gary, oversaw the hog business and lived on the property.

Around 6:00 p.m., Julie finished her daily chores, returned to her car, and drove toward the acreage's exit. There she encountered Lisa Scheele, Gary's new girlfriend, who had stepped outside the house. Because Lisa had a no-contact order against Julie, Julie kept driving toward the gravel road. And when Lisa waved at Julie, Julie did not respond. Inside the house, Lisa and Gary had been repainting his living room, though Gary admitted he was "doing more watching football than painting." After Lisa came back in, she and Gary discussed the encounter with Julie. Just then, Julie texted Gary. The incoming message disparaged Lisa. Gary shared the text with Lisa, prompting a call to the sheriff.

Later that day, Julie received a phone call from Deputy Stan Oostra, inviting her to the Sioux County Sheriff's Office for questioning. Before the day was done,

Oostra arrested Julie for violating the no-contact order. Julie spent the night in jail. A magistrate judge eventually dismissed the charge. But Julie was later fired from her position as a middle school principal.

Come November, Julie sued Gary and Lisa. She alleged (1) false arrest; (2) malicious prosecution; (3) tortious infliction of emotional distress; (4) tortious interference with contract; (5) civil conspiracy; and (6) defamation of character. Julie later alleged negligence against Gary in an amended petition. Julie also sued the landowners, Donald and Margery.[1] Donald, Margery, and Gary sought coverage for their defense from North Star under the insurance policy.

In March 2020, North Star brought this declaratory judgment action, seeking a determination whether Gary is covered under his parents' insurance policy. The following November, the district court granted Julie's motion to intervene. In early February 2021, Julie moved for summary judgment, contending both Gary and Lisa were covered by the policy.[2] A few days later, North Star also moved for summary judgment, taking the opposite position. And later that month, Gary resisted North Star's motion and joined Julie's motion. After examining the relevant terms of the insurance policy, the district court determined neither Gary nor Lisa were covered. Contending the district court misinterpreted the contract terms, Julie appeals.

---

[1] Julie's petition also raised several counts against arresting-officer Oostra and Sioux County.

[2] Lisa was not a named defendant in North Star's declaratory judgment action.

## II. Scope and Standards of Review

We review the interpretation of insurance policies for errors at law. *See Jones v. State Farm Mut. Auto. Ins. Co.*, 760 N.W.2d 186, 188 (Iowa 2008). We do so because construction of an insurance policy is a question of law. *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 618 (Iowa 1991). Our guiding principle is the intent of the parties. *Id.* Unless there is a "genuine uncertainty" in the language, the policy is unambiguous and the words control. *Id.* But when ambiguity does exist, we adopt the interpretation favoring the insured. *Id.* at 619.

Similarly, we review grants of summary judgment for errors at law. *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 500 (Iowa 2013). Summary judgment is particularly appropriate where only the legal consequences of undisputed facts are at stake. *Id.* at 501.

## III. Analysis

### A. Theories of Coverage for Gary

Julie contends that Gary was covered under his parents' insurance policy. In urging this contention, she points to three provisions. First, she notes that Gary is listed as an "additional insured" on the policy's declaration statement. Second and third, she highlights the definitions of "insured" in the policy and asserts that Gary qualifies under two subparagraphs. We consider Julie's arguments in turn.

#### 1. Additional insured

The North Star policy lists Donald as the insured. But, because Gary "is listed as an additional insured on the declaration statement," Julie believes Gary is protected under the entire policy. Countering, North Star notes that Gary's

designation as an "additional insured" only appears in connection with "three Hog Buildings at location 2 in Dunnell, MN." The insurer insists that Gary's name appearing at that location does not mean he qualifies as "an additional insured" in connection with the Sioux County property where the incident occurred.

As the district court observed, Iowa law affords limited coverage for "additional insureds," according to how they are listed in the policy. *See Emps. Mut. Cas. Co. v. Rinderknecht Assocs., Inc.*, No. 05-1057, 2007 WL 108344, at *7 (Iowa Ct. App. Jan. 18, 2007) (noting "Iowa courts have taken a narrow view of the scope of liability coverage for additional insureds" in commercial general liability policies); *see also Regent Ins. Co. v. Estes Co.*, 564 N.W.2d 846, 848 (Iowa 1997) (interpreting coverage for additional insured to be limited to policy provision requiring the liability to arise out of subcontractor's work for general contractor).

True, Gary is listed as an additional insured:

```
ADDITIONAL INSURED
ADDITIONAL INSURED
GARY SCHLEY DUNNELL, MN 56127 3 HOG BLDGS @ LOC 2 (CO-OWNER)
```

But as seen above, that coverage is limited to his co-ownership of three livestock buildings in Minnesota. To adopt Julie's position, and treat Gary like a named insured, would render that limiting language surplusage. *See Fashion Fabrics of Iowa, Inc., v. Retail Invs. Corp.*, 226 N.W.2d 22, 26 (Iowa 1978) ("Courts must strive to give effect to all the language of a contract.").

What's more, we cannot read this section of the contract in isolation. *See id.* ("[A]n agreement is to be interpreted as a whole."). And taking a broader look, we note that the first page of the declaration lists Donald Schley—and only Donald

Schley—as the insured. Unlike Gary, there are no qualifiers related to Donald. That is, he is neither "additional" nor is his status as the insured limited to certain locations. Simply put, Julie's interpretation is unsupported by the contract language.

## 2. Real estate manager

If not an additional insured, Julie contends Gary falls under the policy's definitions of who is insured because he was a "real estate manager" for his parents' property. Neither the contract nor Iowa case law defines the term "real estate manager." So, not surprisingly, Julie and North Star propose differing definitions. Julie lobbies for a plain-language reading. *See, e.g.*, *QBE Ins. Corp. v. Creston Ct. Condo. Inc.*, 58 F. Supp. 3d 1137, 1150 (D. Or. 2014) (defining phrase as "one who conducts, directs, or supervises another's real estate). But North Star asserts this "industry term" requires buying and selling land. *See Moon v. Cincinnati Ins. Co.*, 920 F. Supp. s2d 1301, 1308 (N.D. Ga. 2013), *aff'd*, 592 F. App'x 757 (11th Cir. 2014) (determining "the term 'real estate manager' implicates real estate transactions rather than routine maintenance").

But we need not settle on a definition. Whatever the true meaning, this provision does not protect Gary under these facts. The policy requires more than the title of real estate manager. Instead, for coverage to kick in, the injury-causing actions must have occurred "in the course of acting" as a real estate manager. Julie cannot show that Gary's conduct that allegedly caused her harm—calling the sheriff after her text message—fell within the scope of those duties.

When Lisa and Julie crossed paths, Gary was inside the house, watching football and repainting his living room because his "sons hated the colors of the

house." After Gary received the text insulting Lisa, they called the sheriff. Gary's participation in contacting authorities did not occur "in the course of" real estate management. It did not involve buying and selling land. It did not involve supervising the property. Because Gary was simply redecorating his home with help from his girlfriend, he was not covered by the real-estate-manager provision.

### 3. Domestic duties

As a final argument, Julie points to the policy's coverage for individuals "in the course of performing domestic duties that related to the 'insured premises.'" Because he was painting, Julie contends Gary was performing domestic duties and thus is covered by his parents' policy.[3] But as with the real-estate-manager provision, the "in the course of" requirement foils Julie's argument. As the district court noted, "there is no indication that the call [to the sheriff] was a necessary condition . . . to perform the painting." Even assuming Gary's decision to repaint qualified as a domestic duty, Julie provides no nexus between painting and reporting a possible no-contact-order violation.[4]

### B. Theory of Coverage for Lisa

Finally, Julie argues that Lisa was insured because, like Gary, she was performing "domestic duties." But we decline to consider this argument because any claim for coverage involving Lisa is not ripe. "A case is ripe for adjudication

---

[3] As with "real estate manager," the policy leaves "domestic duties" undefined. But relying on a different provision of the contract, Julie suggests that "domestic duties" are those "that relate to the use and care of the premises."

[4] Julie seeks to overcome this reality by emphasizing her negligence claim against Gary, arguing he "failed to properly supervise Lisa" despite knowing she and Julie would be at the property at the same time and being aware of the no-contact order. But the record shows that Julie's text message, not the chance encounter, was the reason police were called.

when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *See State v. Wade*, 757 N.W.2d 618, 627 (Iowa 2008); *accord Greenbriar Grp., L.L.C. v. Haines*, 854 N.W.2d 46, 50 (Iowa Ct. App. 2014) ("If a claim is not ripe for adjudication, a court is without jurisdiction to hear the claim and must dismiss it." (citations omitted)).

Ripeness "is particularly difficult in the declaratory judgment context." *See Greenbriar Grp.*, 854 N.W.2d at 51. Still, we look for "an antagonistic assertion and a denial of right." *Id.* And, as to Lisa, that element is missing. When North Star sought declaratory judgment, it named Gary alone because "nobody . . . had ever considered that any party would argue that Lisa Scheele was covered under the policy." Indeed, at the time of Julie's intervention, Lisa, unlike Gary, had not submitted an insurance claim. Just as a "declaratory judgment action does not, in and of itself, create a justiciable controversy," Julie cannot use her intervention to manufacture a dispute between Lisa and North Star. *See id.* at 50; *accord* Iowa R. Civ. P. 1.407(1)(b) (limiting the right of intervention to "subject of the action").

Finding no error in the court's summary judgment decisions, we affirm.

**AFFIRMED.**