# IN THE COURT OF APPEALS OF IOWA

No. 13-1624
Filed November 13, 2014

**RYAN GJERDE and JAMIE GJERDE,**
**Individually and as the Legal Representatives**
**of CONNOR GJERDE,**
   Plaintiffs-Appellants,

**vs.**

**UNITEDHEALTHCARE PLAN OF THE**
**RIVER VALLEY, INC. d/b/a UNITEDHEALTHCARE,**
   Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.


Insureds appeal, and the insurer cross-appeals, the district court's judicial

review decision of an external review decision under Iowa Code chapter 514J

(2013).  **AFFIRMED ON BOTH APPEALS.**


Michael S. Jones of Patterson Law Firm, L.L.P., Des Moines, for

appellants.

Sarah E. Crane and Michael C. Richards of Davis, Brown, Koehn, Shors

& Roberts, P.C., Des Moines, and Archana Nath, Michael J. Vaneselow, and

Ranelle Leier of Oppenheimer Wolff & Donnelly LLP, Minneapolis, Minnesota, for

appellee.


Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

Ryan and Jaime Gjerde challenge the district court's judicial review decision under Iowa Code chapter 514J (2013) of an external review decision upholding the denial of coverage by UnitedHealthcare Plan of the River Valley, Inc., doing business as UnitedHealthcare ("United"), for certain intensive therapy services for their son's cerebral palsy and developmental delay. United cross-appeals, challenging the district court's failure to determine whether one of the services at issue was covered under the insurance policy. Because the district court committed no error in concluding the services at issue were not covered under the United policy, we affirm on both appeals.

## I. *Background Facts and Proceedings*

Ryan and Jaime Gjerde are the parents of Connor Gjerde. Connor was born in 2003 and has cerebral palsy and developmental delay. At all times relevant to this proceeding, Connor was covered by a health insurance policy from United, which Jaime obtained through her employment with the Ankeny school district.

The United policy provided coverage for health care expenses that were "medically necessary." The term "medically necessary" was defined in the policy as meeting the following criteria:

> 4.3.1 The service or treatment is consistent with generally accepted principles of medical practice for the diagnosis and treatment of the Member's medical condition; and
> 4.3.2 The service or treatment is performed in the most cost-effective manner in terms of treatment, method, setting, frequency and intensity, taking into consideration the Member's medical condition.

Section 8 of the policy listed "Exclusions," including: "Any service or treatment, Hospital, medical, or otherwise, which is not medically necessary as described and defined in section 4.3 . . . ."

In June and July 2011, Connor received fifteen "intensive physical therapy" sessions at the Hyperbaric Healing Institute ("HHI") in Kansas City, Missouri.[1] The treatments were prescribed by Connor's Ankeny, Iowa, pediatrician. The fifteen sessions at issue were approximately three hours each and were scheduled five days each week for three weeks between June 13 and July 1, 2011. HHI charged $650 for the initial session and $600 for each of the following fourteen sessions, for a total of $9050. Although United had paid claims for similar treatments prescribed for Connor in the past,[2] United refused to reimburse the Gjerdes for Connor's June and July 2011 therapy sessions at HHI upon determining the services were not "medically necessary" within the terms of the United policy.

The Gjerdes appealed United's denial, claiming that under the United policy, Connor was entitled to sixty days of outpatient physical therapy. United did not dispute the Gjerde's coverage for physical therapy, but stated the intensive therapy Connor had received at HHI was sensory integration therapy and hyperbaric oxygen therapy—both of which were "unproven treatment for a diagnosis of cerebral palsy and developmental delay," not medically necessary, and therefore excluded from coverage under the United policy.

---

[1] The Gjerdes refer to this healthcare service provider as "Beyond Therapy," and state that "[b]ills for treatment at Beyond Therapy were submitted through [HHI]." Connor's physical therapy evaluation and his physical therapy discharge summary are on "beyond therapy" letterhead.

[2] According to United, it "only paid for [the prior] treatment due to oversight."

Upon exhausting United's internal grievance process, the Gjerdes requested an external review of United's decision with the Iowa Insurance Commissioner pursuant to Iowa Code chapter 514J.[3] *See* Iowa Code §§ 514J.105 ("A covered person or the covered person's authorized representative may make a request for an external review of a final adverse determination."); 514J.102(1)(a) ("'Adverse determination' means a determination by a health carrier that [a] health care service . . . that is a covered benefit has been reviewed and, based upon the information provided, does not meet the health carrier's requirements for medical necessity, appropriateness, health care setting, level of care, or effectiveness, and the requested service or payment for the service is therefore denied . . . ."); *see also id.* § 514J.106(1) (providing that in general, "a request for an external review shall not be made until the covered person or the covered person's authorized representative has exhausted the health carrier's internal grievance process and received a final adverse determination"). The commissioner assigned an independent review organization, MAXIMUS, Inc., to conduct the external review. *See id.* §§ 514J.107 (providing standards for external review); 514J.111 (providing for approval of independent review organizations); 514J.112 (listing requisite qualifications for independent review organizations).

---

[3] "The purpose of this chapter is to provide uniform standards for the establishment and maintenance of external review procedures to assure that covered persons have the opportunity for an independent review of an adverse determination or final adverse determination made by a health carrier . . . ." Iowa Code § 514J.101. "The health care external review process, which the [Affordable Care Act] requires and Iowa codified in Chapter 514J, provides significant consumer protections that will generally make it easier and less costly for covered persons to challenge an insurer's adverse benefit determinations." Wade S. Hauser, *Does Iowa's Health Care External Review Process Replace Common-Law Rights?*, 99 Iowa L. Rev. 1401, 1429 (2014).

Following its review under section 514J.107, MAXIMUS issued a written decision regarding United's denial of coverage. MAXIMUS found the services Connor received at HHI were "hyperbaric oxygen therapy, therasuit[,] and sensory integration," which according to its "physician consultant[,] were not physical therapy services." MAXIMUS upheld United's denial of coverage on the basis that the "sensory services" provided to Connor by HHI were "unproven for treatment of [Connor's] condition" and therefore excluded from coverage under the terms of the United policy.

The decision of the independent review entity is binding upon the insurance carrier. *Id.* § 514J.110(1). An insured, however, "may appeal the external review decision made by an independent review organization by filing a petition for judicial review" within fifteen business days of the review decision. *Id.* § 514J.110(2)(a). Here, the Gjerdes filed a petition for judicial review appealing the external review decision.

Following a hearing and receipt of the parties' written arguments, the district court entered a ruling on judicial review. Quoting language from the United policy, the district court observed the coverage question rested with whether the services denied by United were medically necessary, i.e., whether the particular forms of therapy at issue were "consistent with generally accepted principles of medical practice for the diagnosis and treatment of [Connor's] medical condition." Citing section 514J.110(2)(b), the court acknowledged it was bound by MAXIMUS's fact findings, and therefore its role was "limited to determining whether the reviewer's ultimate legal conclusion—that the United Policy does not cover the services in question—is erroneous."

With regard to sensory integration therapy and use of a therasuit, the court acknowledged MAXIMUS's finding of no scientific evidence to support the use of these services for Connor's condition, and stated, "[P]rescribing treatments for whose efficacy there is 'no scientific evidence' cannot be 'consistent with generally accepted principles of medical practice.'" The court therefore affirmed the external review decision concluding that "'therasuit and sensory integration therapy' are not covered under the United policy."

With regard to hyperbaric oxygen therapy, however, the court noted its review of the MAXIMUS decision left it unable to determine if MAXIMUS specifically addressed whether hyperbaric oxygen therapy was covered under the United policy. Ultimately, the court concluded it could not "affirm a review decision on a particular treatment when it is not even clear that the reviewer made a decision to review." The Gjerdes appeal, and United cross-appeals, from the district court's ruling.[4, 5]

---

[4] After these appeals were filed, the Iowa Supreme Court entered an order, sua sponte, directing the parties to brief the additional issues of whether Iowa Code section 17A.19(6) required records to be certified by the agency to the reviewing court when the parties stipulated to shorten the record, or whether section 17A.19(6) required the agency to participate in any stipulation to shorten the record. Although "[t]he commissioner may adopt rules pursuant to chapter 17A to carry out the provisions of this chapter," *see* Iowa Code § 514J.117, "[t]he [chapter 514J] external review process shall not be considered a contested case under chapter 17A." *Id.* § 514J.110(1). Considering these sections together, we conclude this proceeding is not subject to the section 17A.19(6) agency certification requirements.

[5] There are approximately 220 pages of documents in the parties' appendix. In an ordinary proceeding, these documents would have been marked, identified, offered, and received as discrete exhibits, and those exhibits would have been identified by exhibit number or letter and concisely described in the table of contents of the appendix. *See* Iowa R. App. P. 6.905(4)(c). Such is not the case here because the documents were not separately numbered or identified when submitted under chapter 514J procedures. Nevertheless, it would have been helpful in our navigation of the appendix had the parties listed and identified each document in the table of contents.

## II.   Scope and Standard of Review

In an appeal under Iowa Code chapter 514J, "[t]he findings of fact by the independent review organization conducting the external review are conclusive and binding."  *Id.* § 514J.110(2)(b).  As the district court aptly noted, "Chapter 514J otherwise establishes no standards whatsoever for review by the court of a challenged external review decision."  "The external review process shall not be considered a contested case under chapter 17A."  *Id.* § 514J.110(1).  "We use the errors at law standard when our decision rests upon the interpretation of an insurance policy."  *Boelman v. Grinnell Mut. Reins. Co.*, 826 N.W.2d 494, 500 (Iowa 2013).  We review the district court's ruling on judicial review for correction of errors at law.  Iowa R. App. P. 6.907.

## III.   Discussion

On appeal, the Gjerdes claim the medical bills denied by United "were for physical therapy prescribed as medically necessary by Connor Gjerde's pediatrician and administered under the direction of a licensed physical therapist, and therefore the trial court erred by not finding coverage under the United[] policy which is supposed to pay for physical therapy."  The Gjerdes challenge the external review decision by MAXIMUS finding the services provided to Connor were not physical therapy.[6]  On cross-appeal, United challenges the district

---

[6] The Gjerdes point out that United "does not contend that the treatment in question is experimental or investigational," and therefore claims those grounds would not be a basis to uphold United's denial of coverage.  We agree.  Although "experimental or investigational treatment" are recognized grounds to deny coverage, *see* Iowa Code § 514J.109, United has not relied on those grounds throughout these proceedings and any such claim is therefore not preserved for our review.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

court's failure to determine whether coverage for hyperbaric oxygen therapy received by Connor was properly denied under the United policy. We address these issues together.

In support of their contention that all services should be covered as "physical therapy," the Gjerdes point to documents from Connor's treating pediatrician in Iowa prescribing—in general terms—physical therapy for Connor and describing the physical therapy as medically necessary for his condition. They contend the bills that were submitted from HHI "were for physical therapy, not hyperbaric oxygen treatments, therasuit[,] or sensory integration therapy." They further emphasize the health records from HHI contain detailed information regarding the services performed on Connor, which they claim is "within the ordinary meaning of 'physical therapy.'"

We observe the billing documents from HHI for Connor's intensive therapy services generally listed the "Type of Service" as "P/T Physical Therapy (Unmodified)." The bills list codes for the procedures performed such as "97112" and "97530."[7] Throughout these proceedings, the Gjerdes have taken an all-or-nothing approach by relying on the presence of the term "physical therapy" on documents from HHI and Connor's pediatrician to claim the services should be covered under the United policy. Indeed, the United policy's "Schedule of Benefits" includes the following coverage for physical therapy:

---

[7] June 13 also listed a third code for "97001," which was not on the billing documents for the other days. Aside from general assertions, it does not appear either party presented specific evidence to prove what these codes actually stand for.

| Coverage Category | **Benefits Through Network Providers** | **Benefits Through Point-of-Service Providers** |
|---|---|---|
| Outpatient Rehabilitative Therapy (Physical/ Occupational/Speech) | 90% of Allowed Charge after Deductible has been met. Maximum 60 outpatient Network and Point-of-Service treatment days per calendar year. The 60 outpatient Network and Point-of-Service treatment days are combined. | 80% of Allowed Charge after Deductible has been met. Maximum 60 outpatient Network and Point-of-Service treatment days per calendar year. The 60 outpatient Network and Point-of-Service treatment days are combined. |

Upon United's receipt and inspection of the bills, however, it determined the specific services provided at the sessions were sensory integration therapy and hyperbaric oxygen therapy. For whatever reason, it appears in previous years—when similar treatments for Connor were covered by United—they had been coded solely as "physical therapy." Prompted by an outside investigation into its billing practices, however, HHI began coding the treatments as sensory integration therapy and hyperbaric oxygen therapy.[8]

In denying the Gjerdes' appeal of its coverage decision, United stated in part, "Hyperbaric Oxygen Therapy and Sensory Integration Therapy are unproven treatment for a diagnosis of cerebral palsy and developmental delay." United further stated:

---

[8] As United points out in its brief, it appears portions of Connor's treatment plan and evaluation from HHI are missing from the record. Specifically, on the section of the physical therapy evaluation form providing Connor's specific treatment plan, several boxes are checked, but the spaces corresponding to the checked boxes (to describe the forms of treatment) are blank. This is in contrast to other sections of the same document in which checked boxes correspond with textual descriptions. United suggests the HHI "records were altered before they were submitted, in order to remove references to treatments that would not be covered [United's policy]." We also note references in the record with regard to Jaime Gjerde's contact with United during the internal grievance process, during which she apparently questioned United whether it would pay for the therapy claims "if they didn't use the therasuit."

The decision was made to deny your request to cover services received from Hyperbaric Healing Institute. This decision was based on your Certificate of Coverage with Preferred Family Pharmacy which states in Article 4.3 that benefits will be paid only for a service, procedure, treatment, supply, device, or item, Hospital, medical or otherwise, which is medically necessary.

United relied on the policy criteria provided in sections 4.3.1 and 4.3.2 (set forth above) requiring a service or treatment to be medically necessary for coverage, and further stated, "Your contract also excludes services or treatments which are not medically necessary as stated in Article 8.1, please refer to the enclosed plan language which explains your benefits and the UHC coverage policies on sensory integration and hyperbaric oxygen therapy."

It is not crystal clear from the record as to what was actually enclosed with the denial letter to the Gjerdes, but the letter references "enclosed . . . [United] coverage policies on sensory integration and hyperbaric oxygen therapy." United's "Coverage Policy Library" describes specific services and treatments, sets forth whether the specific services or treatments are covered or not covered, and provides detailed "Coverage Rationale" to explain the coverage decision. The listing for "Sensory Integration Therapy" states: "This policy describes the use of sensory integration therapy for treatment of learning disabilities, developmental delays, and putative sensory integration disorders. The goals of this procedure vary but can include improvement of sensory integration function, fine motor skills, locomotor abilities, behavior, and academic performance." The therapy description states that sensory integration therapy can use "weighted vests and blankets [such as a therasuit] to encourage a noncognitive, creative, and explorative process," noting, "*The Therasuit* is a modification of a space suit

. . . used to treat patients diagnosed with cerebral palsy . . . and many other neurological disorders." The "Coverage Status" for sensory integration therapy is listed as "Non-Covered." The "Coverage Rationale" stated in part: "Sensory integration therapy is unproven for the treatment of any condition . . . ."

The Coverage Policy Library describes "Hyerbaric Oxygen Therapy and Topical Oxygen Therapy" as "involv[ing] the systemic administration of pure gaseous oxygen under pressures greater than 1 atmosphere. Hyperbaric oxygen therapy is used for a variety of conditions, including carbon monoxide poisoning and tissue injury due to thermal burns, radiation exposure, trauma, surgery, or infection." This type of therapy is listed as a treatment that "Requires Prior Authorization," with the "Coverage Rationale" stating in part: "Hyperbaric oxygen (HBO) therapy is unproven for the following clinical conditions: . . . cerebral palsy . . . ." No pre-authorization is disclosed in the record.

As the independent review organization, MAXIMUS analyzed anew the terms of coverage of the United policy at issue and United's decision denying coverage for Connor's June and July 2011 therapy sessions. *See* Iowa Code § 514J.107(10) ("In reaching a decision the independent review organization is not bound by any decisions or conclusions reached during the health carrier's internal grievance process."). As part of its review, MAXIMUS considered medical records from the HHI detailing the treatment provided, letters from Connor's pediatrician and Connor's mother describing the intensive therapy as "medically necessary to continue his progress," and other relevant documentation submitted for review. In its written decision, MAXIMUS upheld United's denial of coverage on the basis that the "sensory services" provided to

Connor by HHI were "unproven for treatment of [Connor's] condition." As

MAXIMUS's external review decision stated in part:

> The MAXIMUS physician consultant explained that the services that the covered person received from 6/1/11 to 7/1/11 were hyperbaric oxygen therapy, therasuit and sensory integration. The MAXIMUS physician consultant also explained that these services were not physical therapy services. The MAXIMUS physician consultant indicated that there is no scientific evidence to support the use of therasuit and sensory integration therapy for treatment of this covered person's diagnosis. The MAXIMUS physician consultant also indicated that therasuit and sensory integration therapy would be considered experimental/ investigational/unproven for treatment of the covered person's diagnosis. Therefore, the MAXIMUS physician consultant concluded that the sensory services that the covered person received from 6/1/11 to 7/1/11 were unproven for treatment of his condition.
>
> Accordingly, MAXIMUS upholds the Carrier's denial of coverage for the sensory services that the covered person received from 6/1/11 to 7/1/11.[9]

---

[9] The record does not reflect that Connor actually received any hyperbaric oxygen therapy during the fifteen physical therapy sessions at issue. The records for each session make no reference to any such therapy, nor does the discharge summary, which also describes the treatment Connor received. The *only* record reference to hyperbaric oxygen therapy is from Dr. Schutte-Schenck, the Ankeny pediatrician who prescribed physical therapy for Connor. Her plan, included in a pediatric office visit note dated June 1, 2011, states: "4 wks hyperbaric." In a July 6, 2011 "to whom it may concern" letter, Dr. Schutte-Schenck stated: "Connor is also undergoing physical therapy treatment at a facility in Kansas City, in conjunction with hyperbaric oxygen treatments."

Furthermore, although the record does not enlighten us as to service descriptions for the billing code numbers submitted by HHI in Connor's case, it appears from the record that when HHI ordinarily billed for hyperbaric oxygen therapy, it utilized the number 99183, a billing code number *not* submitted by HHI in Connor's case. Additionally, in a March 9, 2012 letter to United's appeal department, Connor's mother stated, "No claims for Hyperbaric Oxygen Therapy . . . were submitted."

We are statutorily bound by the external reviewer's fact finding that Connor received hyperbaric oxygen therapy during the sessions in question. Iowa Code §514J.110(2)(b) ("The findings of fact by the independent review organization conducting the external review are *conclusive and binding on appeal.*") (emphasis added). Nevertheless, we find MAXIMUS's finding regarding hyperbaric oxygen treatment to be highly suspect. The district court's characterization of MAXIMUS's "sloppy use of language" is spot-on.

At the end of the day, whether or not Connor received hyperbaric oxygen treatment appears to be a non-issue. There is nothing in the record to indicate the Gjerde's were ever billed for such treatment, and in any event, there is nothing in the record indicating such billing was submitted to United. With no bills for the treatment

Citing Iowa Code section 514J.107(12), the Gjerdes point to certain types of information that "shall" be considered by the independent review organization in determining whether an insured's coverage decision is contrary to the terms of the policy. That subsection provides:

> In addition to the documents and information provided to the independent review organization pursuant to this section [i.e., information submitted by the insured, *see* subsection 514J.107(7); information submitted by the insurer, *see* subsection 514J.107(8)], the independent review organization shall, to the extent the information or documents are available and the independent review organization considers them appropriate, consider the following in reaching a decision:
>   a. The covered person's pertinent medical records.
>   b. The treating health care professional's recommendation.
>   c. Consulting reports from appropriate health care professionals and other documents submitted by the health carrier, covered person, or the covered person's treating physician or other health care professional.
>   d. The terms of coverage under the covered person's health benefit plan with the health carrier, to ensure that the independent review organization's decision is not contrary to the terms of coverage under the covered person's health benefit plan with the health carrier.
>   e. The most appropriate practice guidelines, which shall include applicable evidence-based standards and may include any other practice guidelines developed by the federal government, national or professional medical societies, boards, and associations.
>   f. Any applicable clinical review criteria developed and used by the health carrier.
>   g. The opinion of the independent review organization's clinical reviewer after considering the information or documents described in paragraphs "a" through "f" to the extent the information or documents are available and the clinical reviewer considers them relevant.

---

having been submitted, it is immaterial as to whether or not the treatment was covered or not covered, or subject to pre-approval, under United's policy, and it is therefore immaterial to this appeal that MAXIMUS made no decision concerning United's denial of coverage for such treatment. Accordingly, we affirm on United's cross-appeal of that issue.

Iowa Code § 514J.107(12). Insofar as the Gjerdes contend the external review by MAXIMUS did not include a consideration of the requisite information, we disagree. At the outset of its external review decision, MAXIMUS listed the "Documentation Submitted for Review," including:

- Letter from the Iowa Insurance Division regarding the Independent Review Organization [IRO] selection dated 4/6/12.
- Carrier coversheet.
- Letters from the member's mother dated 3/8/12 and 4/10/12.
- Carrier correspondence about the appeals.
- Carrier Contact Service Form.
- Carrier screen prints.
- Member Appeal Request Form.
- Letter from Dr. Schutte-Schenck [Connor's pediatrician] dated 7/6/11.
- Copy of a prescription for physical therapy for the covered person.
- Portions of the Carrier's contract.
- Medical records.
- Carrier Claims inquiry screen prints.
- Health Insurance Claim forms.
- Carrier policy regarding sensory integration therapy.
- Carrier policy regarding hyperbaric oxygen therapy and topical oxygen therapy.
- Carrier email.
- Carrier Appeal Summary.
- Carrier denial letter.
- Physical therapy records [from HHI].

We conclude MAXIMUS's reviewed the requisite information as set forth in section 514J.107(7)-(12) (describing the information an independent review organization should consider in its review) in reviewing the Gjerdes' claim.

MAXIMUS found the services Connor received at HHI were "hyperbaric oxygen therapy, therasuit[,] and sensory integration," which according to its "physician consultant[,] were not physical therapy services." MAXIMUS found the "sensory services" provided to Connor by HHI were "unproven for treatment

of [Connor's] condition." MAXIMUS further found "there is no scientific evidence to support the use of therasuit and sensory integration therapy for treatment of [Connor's] diagnosis." Judicial review of MAXIMUS's findings is severely circumscribed by statute. "The findings of fact by the independent review organization conducting the external review are conclusive and binding." *Id.* § 514J.110(2)(b).[10] The district court concluded, "It is obvious that prescribing treatments for whose efficacy there is 'no scientific evidence' cannot be 'consistent with generally accepted principles of medical practice.'" We agree.

As discussed above, the United policy provided coverage only for health care expenses "consistent with generally accepted principles of medical practice for the diagnosis and treatment of the Member's medical condition." The district court did not err in affirming "the MAXIMUS review decision that 'therasuit and sensory integration therapy' are not covered under the United policy." Consequently, we affirm the district court's ruling.

**AFFIRMED ON BOTH APPEALS.**

---

[10] While the external review process makes it easier and less costly for an insured to challenge a denial of coverage, the process has its limitations. "[I]t does not contain a procedure for depositions or live testimony. The external review process also likely prevents a covered person from presenting additional evidence in the district court demonstrating that the [IRO] erred." *See* Hauser, 99 Iowa L. Rev. at 1428-29.